**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


DANIEL HAGGART,           )
                              )     Civil Action No. 10 – 346
             Plaintiff,    )
                              )     Chief Magistrate Judge Lisa Pupo Lenihan
               v.           )     ECF No. 48
                              )
ENDOGASTRIC SOLUTIONS,  )
INC.,                       )
                              )
            Defendants.  )


## OPINION ON PLAINTIFF'S MOTION FOR CLASS CERTIFICATION


## I.  HISTORY AND SCOPE OF CLAIM


      As noted in the Court's previous Opinion, the claims presently before this Court in this

action relate to Plaintiff's allegations that he suffered from gastroesophageal reflux disease

("GERD") managed acceptably through pharmaceuticals and without surgery for many years.

He was a candidate for surgical intervention through a "Nissen Fundoplication" but had

reservations regarding that device's permanence and potential side effects.  Plaintiff learned of

Defendant's alternative device, the "EsophyX", used in transoral incisionless fundoplications.

He attests that he relied on representations made by Defendant in its website, brochures and other

advertising regarding the "reversibility" of the insertion of this device in electing to have the

procedure performed in Pittsburgh in June, 2009.[1]  Three months later, the surgeon advised that

---

[1] Cf. Defendant's Memorandum of Law in Support of its Motion in Opposition to Class
Certification (hereafter "Defendant's Memo in Opposition") at 10-11 (asserting that its EsophyX

the procedure had failed (*i.e.*, the device had come apart) and recommended that Plaintiff proceed with the Nissen Fundoplication.  Plaintiff attests he then learned the procedure was not truly "reversible" but only "revisable" (*i.e.*, it could not be completely undone because tissue had grown around the fasteners), and he was foreclosed from other previously-available treatment options.  The Nissen Fundoplication was performed, on the advice of Plaintiff's treating physician, in February, 2010 and Plaintiff attests that his symptoms have worsened.  Plaintiff initially averred that "more than a thousand individuals have undergone the EsophyX procedure in various states, including Pennsylvania, and many more will continue to undergo this procedure in the future."  Amended Complaint at Para. 71.  More recently, he notes that "[a]s of June 1, 2011, the number of patients who have undergone the procedure stood at 5,842."  Plaintiff's Brief in Support of Motion for Class Certification (hereafter "Plaintiff's Brief in Support") at 5.  He concedes that the procedure has been successful for "most other members of the prospective class." Id. at 20.

Presently pending is Plaintiff's Motion for Class Certification which, for reasons among those briefed by Defendants and as set forth below, will be denied.

---

device is marketed primarily to hospitals and physicians, its sales force contacts physicians who may be interested in the procedure, and physicians are required to attend a training seminar on appropriate use of the device); id. at 22 (asserting that individual patients are exposed to different sources and content of information – such as directly through Defendant's materials, their physicians, and/or independent internet research); Plaintiff's Brief in Reply to Defendant's Brief in Opposition (hereafter "Plaintiff's Brief in Reply") at 5 (attesting that "misrepresentations were made available directly to prospective patients, via the company's websites and otherwise, as well as in materials produced for and distributed to physicians and/or hospitals, and materials provided to physicians/hospitals to give, in turn, to prospective patients").

## II.  ANALYSIS AS TO CLASS CERTIFICATION

The class-action device is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Califano v. Yamasaki, 442 U.S. 682, 700–01 (1979).  Class relief is "peculiarly appropriate" when the "issues involved are common to the class as a whole" and when they "turn on questions of law applicable in the same manner to each member of the class." Id. at 701.  It is appropriate in cases where it "saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 155, (1982) (quoting Califano, 442 U.S. at 701).

Class certification is proper only if the trial court is satisfied that the prerequisites of Rule 23 are met.  See, e.g., In re Hydrogen Peroxide Antitrust Litigation, 552 F.3d 305, 309 (3d Cir. 2008) (citing Gen Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982)). To meet the prerequisites of Rule 23, a plaintiff must establish both that the four requirements of Rule 23(a) have been met—numerosity, commonality, typicality, and adequacy—and that the pleading requirements of Rule 23(b)(1), (2), or (3) have been met.  See generally Fed. R. Civ. P. 23.  The plaintiff bears this burden by a preponderance of the evidence. See, e.g.,  Hydrogen Peroxide, 552 F.3d at 320. In analyzing whether Rule 23's requirements have been met, the Court makes the factual and legal inquiries necessary and considers all relevant evidence and arguments presented by the parties.  Id. at 307.

## A.  Plaintiff's Proffered Alternative Class Definitions Fail to Comport with Class Definition Requirements and/or the Prerequisites of Rule 23(a)

A threshold requirement to a Rule 23 action is the actual existence of a class which is sufficiently definite and identifiable.  See, e.g., Kline v. Sec. Guards, Inc., 196 F.R.D. 261, 266

(E.D. Pa. 2000); Reilly v. Gould, Inc., 965 F. Supp. 588, 596 (M.D. Pa. 1997); Clay v. Am.

Tobacco Co., 188 F.R.D. 483 (S.D. Ill. 1999). The initial inquiry on class definition is distinct

from the analysis required by Federal Rule of Civil Procedure 23. See, e.g., Sanneman v.

Chrysler Corp., 191 F.R.D. 441, 446 n. 8 (E.D. Pa. 2000).

The four prerequisites to a class action, under Federal Rule of Civil Procedure 23(a), are:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions

of law or fact common to the class, (3) the claims or defenses of the representative parties are

typical of the claims or defenses of the class, and (4) the representative parties will fairly and

adequately protect the interests of the class.  As a shorthand, courts regularly refer to the

prerequisites as numerosity, commonality, typicality, and adequacy of representation. See, e.g.,

In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 527 (3d Cir. 2004); Georgine v. Amchem

Prods., Inc., 83 F.3d 610, 624 (3d Cir.1996), aff'd sub nom. Amchem Prods., Inc. v. Windsor,

521 U.S. 591 (1997).  All four Rule 23(a) prerequisites for class certification serve as

"guideposts for determining whether maintenance of a class action is economical and whether

the named plaintiff's claim and the class claims are so interrelated that the interests of the class

members will be fairly and adequately protected in their absence." Amchem, 521 U.S. at 626.

### 1.  Class Defined as Those Who Relied on Representations Related to Reversibility or Revisability

Plaintiff's proposal of an alternative class defined as "all individuals who have undergone

the EsophyX [procedure] . . . and who have relied upon representations" related to its

reversibility and/or revisability,[2] is simply a "non-starter".   This alternative class definition is

---

[2] Plaintiff's Brief in Support of Motion for Class Certification (hereafter "Plaintiff's Brief in Support") at 3.

untenable because it is not objectively, reasonably ascertainable.  And even if it met this threshold criteria, which the Court concludes it does not, Plaintiff has not met his burden of showing, by a preponderance of the evidence, that it would meet the numerosity requirement of Rule 23(a).

### a. Alternative Class is Not Reasonably, Objectively Ascertainable

As noted above, "[c]lass certification presupposes the existence of an actual 'class.' " White v. Williams, 208 F.R.D. 123, 129 (D. N.J. 2002) (quoting In re Sch. Asbestos Litig., 56 F.3d 515, 519 (3d Cir. 1995)).  A "proposed class must be sufficiently identifiable" and it must be "administratively feasible to determine whether a given individual is a member of the class." Id. (quoting Mueller v. CBS, Inc., 200 F.R.D. 227, 233 (W.D. Pa. 2001)).  See also Kline v. Sec. Guards, Inc., 196 F.R.D. 261, 266 (E.D. Pa. 2000) (holding that plaintiffs must minimally define the class "in a way that enables the court to determine whether an individual is a class member"). This consideration necessitates that class membership be defined in an "objective manner."  See, e.g., Kemblesville HHMO Center, LLC v. Landhope Realty Co. 2011 WL 3240779, 4 (E.D. Pa. 2011) (quoting Rowe v. E.I. Dupont De Nemours & Co., 262 F.R.D. 451, 455 (D. N.J. 2009) (citing Bentley v. Honeywell Int'l Inc., 223 F.R.D. 471, 477 (S.D. Ohio 2004)).[3]

Thus, certification is denied when determining membership in the class essentially requires a mini-hearing as to each prospective class member.  Id. (citing Agostino v. Quest Diagnostics Inc., 256 F.R.D. 437, 478 (D.N.J. 2009) (citing Forman v. Data Transfer, Inc., 164 F.R.D. 400,

---

[3] The Manual for Complex Litigation (Third) similarly instructs that it is "necessary to arrive at a definition [of a class] that is precise, objective, and presently ascertainable." MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.14 (cited in In re Linerboard Antitrust Litig., 203 F.R.D. 197, 221, (E.D. Pa. 2001)).  See also In re Linderboard, 203 F.R.D. at 221 ("Definitions ... should avoid criteria that are subjective (e.g., a plaintiff's state of mind) . . . .") (quotations omitted).

403 (E.D. Pa.1995)).  See also, *e.g.*,  Mann v. TD Bank, N.A. , 2010 WL 4226526, *1 (D. N.J.,

Oct. 20, 2010) (concluding putative class ran afoul of requirement that it "be reasonably

ascertainable" where court "would have to hear anecdotal evidence from each prospective class

member" to determine membership under proposed definition);  Kondratick v. Beneficial

Consumer Disc. Co., 2006 WL 305399, *7 (E.D. Pa. Feb.8, 2006) (holding that "[t]o determine

if an individual is a class member, a court must be able to do so by reference to the class

definition");  Solo v. Bausch & Lomb Inc., 2009 WL 4287706, (D. S.C. Sept. 25, 2009) (class

not appropriate for certification where determining class membership would require "fact-

intensive mini-trials"). [4]

The determination of class membership under Plaintiff's alternative definition would

require this Court to adjudicate on a person-by-person basis whether each proposed class

member relied on Defendant's representations.  That is, class membership would not be

ascertainable without the imposition of "serious administrative burdens incongruous with the

efficiencies expected in a class action." Sanneman v. Chrysler Corp., 191 F.R.D. 441, 446

(E.D.Pa.2000) (concluding certification inappropriate where determining class membership

would create such burdens).

---

[4]  See also Allen-Wright v. Allstate Ins. Co., 2008 WL 5336701 (E.D. Pa. Dec. 17, 2008)
(identifying problems with a class definition that required case-by-case factual determination);
Forman v. Data Transfer, Inc., 164 F.R.D. 400, 403 (E.D. Pa.1995) (same).

The Court does proceed to resolve factual or legal disputes relevant to class certification, even
when there is "[a]n overlap between a class certification requirement and the merits of a claim."
Hydrogen Peroxide, 552 F.3d at 316, 318 (cited in In re Schering Plough Corp. ERISA
Litigation , 589 F.3d 585, 600 (3d Cir. 2009)).  See also discussions *infra*.  Under this alternative
class definition, however, the contemplated threshold determinations involve numerous
potentially disparate merits-based inquiries, and – as noted above - the duty of the Court to make
threshold legal and factual determinations to decide class certification does not extend so far.

**b.  Alternative Class Not Sufficiently Shown to Meet Rule 23(a) Requirement of Numerosity**

As noted above, Rule 23(a) requires that the prospective class be so numerous that joinder of all members would be impractical.  This requirement is not satisfied by Plaintiff's evidence under the alternative class definition incorporating reliance.  Conclusory allegations do not satisfy Rule 23(a)'s numerosity requirement. As noted above, it is Plaintiff's burden to establish the appropriateness of class certification, and to produce evidence supporting his Motion.  See, *e.g.*, Kemblesville HHMO Center, LLC v. Landhope Realty Co.  2011 WL 3240779, *7 (E.D. Pa. 2011).

Plaintiff has offered insufficient evidence of record indicating (or identifying a class-proceeding-appropriate method for ascertaining) that other putative class members relied on Defendant's representations relating to reversibility or revisability.  Although Plaintiff points to his expert Affidavit statements that "many patients encountered and relied upon" representations as to reversibility and that they "led to many patients having" the procedure, see Plaintiff's Brief in Reply at 3, the Affidavits do not identify the basis for these conclusory assertions and thus do not enable the Court to assess the meaning ascribed to such critical terms as "many", "relied" and "led to".  Moreover, there is no indication that these statements were made upon personal knowledge, which is particularly problematic where the private motivation of a third party is at issue.  Cf. Defendant's Memo In Opposition at 6 & n. 1; 21 (asserting that Plaintiff's counsel "has been placing advertisements on the internet for the last two years seeking additional class members" and only two other individuals have been identified of record (without much further information) as potential class members).  The record fails to adequately evidence that a

7

significant number of putative class members would be in the same situation as the proposed

representative, and meet this proposed class definition.

### 2. Class Defined as Those Who Underwent EsophyX Procedure.

Plaintiff also proposes a class defined as "all individuals who have undergone the

EsophyX procedure in the United States since September 24, 2007."  Because this proposed class

definition clearly fails the Rule 23(a) typicality requirement, it will not be necessary for the

Court to adjudicate the other criteria.  It notes, however, that it appears numerosity would be met,

see supra at 2, while commonality would less likely be met, for purposes of Rule 23(a), under

Plaintiff's theory of the case.[5]

This proposed class fails the typicality requirement owing to "marked differences" as to

information received and relied upon, legal theory underlying Plaintiff's claims, and/or

injury/harm. Hassine v. Jeffes, 846 F.2d 169, 177 (3d Cir. 1988) ("Typicality entails an inquiry

into whether the named [plaintiff's] individual circumstances are markedly different or the legal

theory upon which the claims are based differs from that upon which the claims of the other class

---

[5]  The most recent guidance on commonality under Rule 23(a) comes from the Supreme
Court.  See Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2551 (2011) (holding that
commonality is measured not by "the raising of common 'questions' . . . but, rather the capacity
of a classwide proceeding to generate common answers apt to drive the resolution of the
litigation") 131 S.Ct. at 2551.  Id. (holding that, in addition, commonality requires that "the class
members have suffered the same injury").  Id.  While it appears that there could certainly be
common issues resolvable in a way that would move the litigation forward, e.g., the difference
between "reversibility" and "revisability", the content and/or methods of dissemination of related
information, and/or common questions of law, it also appears that class members have not
suffered the same class of injury (as discussed infra) and that commonality would therefore not
be met under Dukes.  As noted above, the Court need not decide this factor.

members will perforce be based").[6]   Plaintiff alleges that he reviewed and relied on Defendant's

website and other published information, including representations of "reversibility" in electing

to undergo the EsophyX procedure, and would not have undergone the procedure had he known

it was not truly reversible.[7]   Evidence of record indicates there would be numerous, inevitable

questions regarding the information received by individual patients - from their physicians or

other sources - and their reliance on particular representations.[8]

-------

[6]   The typicality requirement generally assesses "whether the action can be efficiently
maintained as a class and whether the named plaintiffs have incentives that align with those of
absent class members . . ." Sanneman, 191 F.R.D. at 447.

   In In re Schering Plough Corporation ERISA Litigation, 589 F.3d 585, 599–600 (3d Cir.
2009), the Third Circuit held that "consideration in assessing typicality ... include[s] three
distinct, though related, concerns: (1) the claims of the class representative must be generally the
same as those of the class in terms of both (a) the legal theory advanced and (b) the factual
circumstances underlying that theory; (2) the class representative must not be subject to a
defense that is both inapplicable to many members of the class and likely to become a major
focus of the litigation; and (3) the interests and incentives of the representative must be
sufficiently aligned with those of the class." See id. at 597 ("The typicality requirement furthers
[the general aim of fair and adequate representation] by ensuring that the class representatives
are sufficiently similar to the rest of the class—in terms of their legal claims, factual
circumstances, and stake in the litigation—so that certifying those individuals to represent the
class will be fair to the rest of the proposed class.") (citations omitted).

[7] Cf. Plaintiff's Brief in Support at 15-16 (describing "web pages, embedded videos,
pamphlets/brochures, press releases and articles, charts/graphs, presentations" as "the sorts of
materials" that Plaintiff 'like most of the rest of the class, reviewed before undergoing the . . .
procedure").

[8] Cf. Defendant's Memo in Opposition at 12 ("As with any surgical procedure, a patient's
decision to undergo the EsophyX procedure is informed by the specific medical advice provided
by his or her doctor" and "each surgery is typically preceded by a dialogue between the doctor
and patient . . . ."); id. at 13 (asserting that individual patients' problems, available treatment
options, and considerations are unique, with some potentially preferring EsophyX procedure
because, e.g., it is incisionless/less invasive or has a shorter recovery time). Cf. also Plaintiff's
Brief in Support at 8 ("Even if this Court would seek to limit the class, ultimately, to those
patients to whom the misrepresentations in question were made, it seems clear that" this would
encompass "the vast majority of patients"). Compare Defendant's Brief in Opposition at 33-34
(asserting that class is uncertifiably over-broad where it includes members who lack standing

More importantly for purposes of a typicality analysis, Plaintiff's theory of harm because he was informed as to and relied on representations of its "reversibility" in electing a surgical procedure is harm of a fundamentally different nature – *i.e.*, it is different in kind – from the inchoate harm, if any, of being subject to misrepresentations in the abstract. See Hassein, supra; Weiss v. York Hosp., 745 F.2d 786, 809 n. 36 (3d Cir. 1984)); In re Schering, 589 F.3d at 597-98 (noting that "the requirement that the *legal theory* and *legal claims* of the proposed representative must be typical of those of the class comes directly from the plain language of the Rule") (emphasis in original).[9]

Plaintiff also alleges that because his EsophyX procedure failed (*i.e.*, the device came apart), he was required to undergo a Nissen Fundoplication approximately seven (7) months later, precluded from other treatment options which he would have preferred, and suffered a worsening of his medical condition.  In contrast, Plaintiff concedes that most patients undergoing an EsophyX procedure have had a successful result.  There is, therefore, an absence of typicality as to harm in this respect as well. See Plaintiff's Brief in Support at 20 ("[I]t appears that most other members of the prospective class have undergone an EsophyX procedure that did not fail.

---

under Article III based on a "personal injury fairly traceable to the defendant's allegedly unlawful conduct) (quoting Allen v. Wright, 468 U.S. 737, 738 (1984)). Id. (objecting that proposed class definition would include patients "regardless of whether they ever saw any of the marketing statements at issue and even if they have suffered no injury of any kind attributable to [Defendant's] conduct or the EsophyX procedure").

[9] See also Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 182 - 183 (3d Cir. 2001) ("Typicality ensures the interests of the class and the class representatives are aligned 'so that the latter will work to benefit the entire class through the pursuit of their own goals.'") (quoting Barnes, 161 F.3d at 141); id. ("The typicality criterion is intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees by requiring that the common claims are comparably central to the claims of the named plaintiffs as to the claims of the absentees.") (quoting Baby Neal v. Casey, 43 F.3d 48, 57 (3d Cir. 1994)).

Such an individual, though still entitled to damages for having been deceived into making a medical decision, would have relatively little at stake, financially."); <u>compare</u> Defendant's Brief in Opposition at 6 ("The vast majority of these proposed class members are patients for whom the EsophyX surgery was entirely successful and who have not been harmed in any manner whatsoever.").[10]

And as discussed below, even if the putative class could satisfy the more liberal requirements of Rule 23(a), which this Court concludes it could not, it would still fail to meet the certification requirements of either Rule 23(b)(2) or (b)(3).

**B.  Plaintiff Fails to Meet Injunctive Relief Requirements of Rule 23(b)(2)**

Rule 23(b)(2) is, as Defendant duly notes, intended where "final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate."  Fed. R. Civ. P. 23(b)(2).  These class actions are accordingly limited to those "seeking primarily" such relief.  Barnes v. Am. Tobacco Co., 161 F.3d 127, 140 (3d Cir. 1998).  Unless the monetary relief claims are incidental, cases included such claims cannot be certified under 23(b)(2).  <u>See</u> <u>Dukes</u>, 131 S.Ct. at 2557.

As Defendant notes, Plaintiff's request is primarily one for monetary relief.  Even more essentially fatal to his motion for certification under (b)(2) is that  Plaintiff only seeks to enjoin

---

[10]   The Court also notes, without deciding or relying upon in its decision, that fulfillment of the fourth requirement – adequacy of representation – is also in doubt, owing to the potential conflict of interests given the differences in Plaintiff's circumstances and those of other putative class members.  <u>See, *e.g.*,</u> <u>Reilly v. Gould, Inc.,</u> 965 F.Supp. 588, 600 (E.D. Pa. 1997).  <u>Cf.</u>  <u>In re Schering,</u> 589 F.3d at 602 (noting "clear similarities between the components of the typicality inquiry relating to the . . . alignment of interests, and . . .second part of the adequacy inquiry that focuses on possible conflicts of interest").  <u>See generally</u> Defendant's Memo in Opposition at 38-39.

Defendant from making representations to future potential EsophyX procedure patients;[11] *i.e.*, to

individuals *who are not members of the class* as defined.

## C.  Plaintiff Satisfies Neither "Predominance" nor "Superiority" Requirements of Rule 23(b)(3)

Class certification under Fed.R.Civ.P. 23(b)(3) requires both predominance and superiority.

The predominance inquiry demands "that questions of law or fact common to the members of the

class predominate over any questions affecting only individual members."  Fed.R.Civ.P.

23(b)(3); see also Dukes, 131 S.Ct. at 2551.  Superiority calls for a determination that a class

action is the best method of achieving a "fair and efficient adjudication of the controversy."  *Id.*[12]

First then, class action proponents seeking Rule 23(b)(3) certification must present some

creditable demonstration that class-wide issues "predominate", *i.e.*, that the issues may primarily

be addressed through generalized – as opposed to individualized – proof.  See generally

Amchem Prods. Inc. v. Windsor, 521 U.S. 591 (1997) (noting that predominance inquiry "trains

on the legal or factual questions that qualify each class member's claim").[13]

---

[11]  See Plaintiff's Brief in Support at 22 (noting that Plaintiff seeks to enjoin Defendant "from continuing to make representations or disseminate literature describing the EsophyX TIF procedure" in specific allegedly misleading ways and/or "require specific warnings to be added").

[12]  As discussed *infra*, in considering Rule 23(b)(3)'s requirements, the Court generally reviews the substantive elements of Plaintiffs' cause of action, the proof necessary for the various elements, and the manageability of the trial on these issues. Where liability determinations require the introduction of substantial individualized proof (*i.e.*, evidence that varies from member to member) to establish claims, and the class action will not provide significant savings of time and effort, class certification under Rule 23(b)(3) is improper. See, *e.g.*, Kline v. Security Guards, Inc., 196 F.R.D. 261, 266 (E.D. Pa. 2000) (explaining that "[a]ny individual differences . . . must be of lesser overall significance than the common issues, and they must be manageable in a single class action").

[13]  See also In re Hydrogen Peroxide Antitrust Litig., 552 F.3d at 311-12 ("Predominance 'tests

To determine whether an issue is common or individual, a court must examine the "nature of the evidence that will suffice to resolve" the issue. In re Hydrogen Peroxide Antitrust Litig., 552 F.3d at 311 (quoting Blades v. Monsanto Co., 400 F.3d 562, 566 (8th Cir.2005)). This requires the court to "formulate some prediction as to how specific issues will play out." Id. (quoting In re New Motor Vehicles Can. Exp. Antitrust Litig., 522 F.3d 6, 20 (1st Cir. 2008)). "If proof of essential elements of the cause of action requires individual treatment, then class certification is unsuitable." Id. (quoting Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 172 (3d Cir.2001)).[14]

In this case, reliance on Defendant's alleged misrepresentations in electing to undergo the EsophyX procedure is central; it is the lynchpin of damages.  Indeed, Plaintiff recognizes its centrality in proposing it as an alternative class definition.[15]  But the evidence of record indicates that (1) putative class members received information regarding the procedure primarily from their physicians, which information likely varied for reasons related to both the physicians themselves and the individual patient's medical circumstances; (2) the amount and content of information received by a patient directly from Defendant's marketing or other materials likely

---

whether proposed classes are sufficiently cohesive to warrant adjudication by representation.' ") (quoting Amchem, 521 U.S. at 623); id. at 311 (noting that predominance is "far more demanding" than the commonality requirement of Rule 23(a)").

[14] Cf. Wal-Mart, 2011 WL 2437013 at *7 (holding, in assessing satisfaction of Rule 23(a)(2)'s threshold requirement of commonality, that "[w]hat matters . . . is . . . the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation").

[15] Compare Plaintiff's Brief in Support at 10 (asserting that "linchpin of Plaintiff's cause of action concerns whether the representations . . . were false"); Plaintiff's Brief in Reply at 8 (stating that "the crux of the entire dispute between Plaintiff and Defendant, is whether these representations were false" which "does not vary and depends in no way upon the particular patient/class member").

differed from Plaintiff's and as between putative class members as well; and (3) individual

decisions to undergo the procedure were likely influenced by and premised on varying individual

considerations.  In addition, it is not immediately apparent that prospective EsophyX patients

would ordinarily place substantial emphasis on reversibility in view of the fact that the procedure

was offered as a less intrusive alternative to the Nissen procedure, so that in the infrequent event

EsophyX was unsuccessful, progression to the Nissen – rather than attempted reversal – would

be, as it was for Plaintiff, the recommended course.  See generally Defendant's Memo In

Opposition at 25-30 (discussing considerations and citing cases denying class certification where

"multiple layers of individualized determinations . . . would be needed to assess whether a

defendant's allegedly misleading marketing influenced both a physician's medical advice to a

patient and the patient's ultimate decision-making").[16]  The resultant injury/harm is also, of

course, central to this case and it too raises a multitude of individual, as opposed to, common

issues. See discussion and case citations *supra*; see also In re Hydrogen Peroxide, 552 F.3d at

---

[16]  See also Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 187 (3d Cir. 2001) (affirming that, absent proof of class-wide loss resulting from reliance, ascertainment of injury/damage to class members would necessarily entail individual questions presenting insurmountable obstacle to certification); Dukes, 131 S.Ct. at 2552 (concluding class certification inappropriate where it is "impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question").

Cf. Defendant's Memo in Opposition at 31-32 (distinguishing In re Prudential Ins. Co. of Am. Sales Practices Litig., 148 F.3d 283 (3d Cir. 1998)); Johnston v. HBO Film Mgmt., Inc., 265 F.3d 178 (3d Cir. 2001) (same, where putative class members were not uniformly exposed to same information and determining reliance would necessarily require individual assessment); In re LifeUSA Holding Inc., 242 F.3d 136 (3d Cir. 2001) (same, distinguishing "uniform, scripted, and standardized sales presentations" in which defendants "uniformly misled class members with virtually identical oral misrepresentations" in Prudential) (quoting In re Prudential, 148 F.3d at 511-12).  For reasons discussed by Defendant, In re Prudential is simply not analogous.

311 ("If proof of the essential elements of a cause of action requires individual treatment, then predominance is defeated and a class should not be certified.").

Secondly, this action fails to satisfy Fed.R.Civ.P. 23(b)(3)'s superiority requirement, given the "difficulties likely to be encountered in the management of a class action."  See  Fed.R.Civ.P. 23(b)(3)(D);[17] see also Newton, 259 F.3d at 192.  Manageability "encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 164, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); Danvers Motor Co. v. Ford Motor Co., 543 F.3d 141, 149 (3d Cir.2008).[18]

In the case *sub judice*, in light of the extent to which determinations would need to be made on an individual basis, adjudicating the claims as a class would be unlikely to reduce litigation or preserve judicial resources.  To the contrary, individual questions of information received, reliance, and actual injury would require extensive individual assessments and significant trial time would likely have to be devoted to their resolution.  See  G.M. Trucks, 55 F.3d at 783 ("One of the paramount values in [class actions] is efficiency.")

---

[17] The four considerations relevant to superiority are: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing the class action.  See Hall v. Best Buy Co., Inc., 274 F.R.D. 154, 166 (E.D. Pa. 2011).

[18] Cf. In re Phenylpropanolamine Products Liab. Litig., 214 F.R.D. 614 (W.D.Wash.2003) (conducting analysis of whether class members were reasonably ascertainable under Rule 23(b)(3)'s manageability requirement).

III.   **CONCLUSION**

Accordingly, upon review of the pleadings and briefs of record, as well as the evidence

before the Court, it will be ordered that Plaintiff's Motion for Class Certification be denied.

_____

Lisa Pupo Lenihan
United States Chief Magistrate Judge

Date:  June 28, 2012

16